[Crim. No. 1334. Third Appellate District.—March 13, 1934.]

THE PEOPLE, Respondent, v. MABEL WORTMAN, Appellant.

R. A. Zarick and Thomas O'Hara for Appellant.

U. S. Webb, Attorney-General, and Jess Hession, Deputy Attorney-General, for Respondent.

PLUMMER, J.—The defendant appeals from a judgment of conviction following a trial wherein the indictment charged the defendant with contributing to the delinquency of a minor, in the following language:

"The Grand Jury of the County of Sacramento hereby accuses Mabel Wortman of an indictable misdemeanor, to-wit: Contributing to the delinquency of a minor on or about the 20th day of October, 1933, at the County of

Sacramento, in the State of California, did then and there wilfully, unlawfully and knowingly, by certain acts, omissions, commands and persuasions cause, and tend to cause, encourage and contribute to the delinquency of one Marianna Fields, *alias* Jean Larson, of the age of 16 years, or thereabouts, in that the said Mabel Wortman did wilfully and unlawfully and knowingly, by certain acts, omissions, commands and persuasions, cause the said Marianna Fields, *alias* Jean Larson, the minor aforesaid, to occupy the same bed with Joe Franks, and by reason thereof, the said Marianna Fields, *alias* Jean Larson, was then and there in danger of growing up to lead an idle, dissolute and immoral life, contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the People of the State of California.''

The appeal is from the order of the court denying the defendant's motion for new trial, from the judgment of conviction following the verdict of the jury, and also from the order of the court overruling the appellant's demurrer to the indictment just set forth. As no appeal lies from this latter order, it is hereby dismissed. The sufficiency of the indictment, however, may be raised upon consideration of the appeal from the judgment, and for this case the irregularity of presenting the alleged error of the court in overruling the appellant's demurrer will be disregarded, and the sufficiency of the indictment considered.

The indictment is based upon the provisions of subdivision XI of section 1, and section 21 of the Juvenile Court Law, volume 2, Deering's General Laws, page 2075 et seq. Section 21, *supra,* provides that ''Any person who shall commit any act or omit the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 21 years to come within the provisions of any of subdivisions 1 to 13, inclusive, of section 1 of this act, or which act or omission contributes thereto, or any person who shall, by any act or omission, or by threats or commands or persuasion, induce or endeavor to induce any person under the age of 21 years to do or perform any act or to follow any course of conduct, or to so live as would cause, or manifestly tend to cause any such person to become or remain a person coming within the provisions

of any of subdivisions 1 to 13 of section 1 of this act, shall be guilty of a misdemeanor,'' etc.

Subdivision XI of section 1, *supra*, defining ''delinquency'', reads: ''One who is leading, or from any cause is in danger of leading an idle, dissolute, lewd or immoral life.''

While the evidentiary matters necessary to support the indictment in this case are not set out therein, the indictment, of course, must specifically refer to some act which has for its tendency the causing of the minor either to lead, or be in danger of growing up to lead an idle and dissolute life. The indictment in this case does particularly specify the act which was induced by the defendant to be performed by the minor, and there is no escape from the conclusion that the performance of the act so induced would not only tend to cause the minor to lead an idle and dissolute life, but to begin immediately an immoral and dissolute course of living. We do not think it necessary to set out in the opinion the exact words and persuasions used by the appellant in inducing the prosecutrix to occupy a bed with Joe Franks, even though all such evidentiary matters must necessarily be presented as testimony before the jury, upon which the jury would be required to base its verdict.

That the indictment in this case is sufficient is supported by the reasoning of this court in the case of *People* v. *Perfetti*, 88 Cal. App. 609 [264 Pac. 318], and the cases there cited.

The indictment further follows the language of the statute, together with a specification of the particular act upon which it is sought to hold the appellant liable, and directs her attention thereto in such a manner as to adequately inform her of the act upon which the prosecution would rely for a conviction. It is true that the indictment does not contain a detailed statement of the specific acts, or omissions, or commands on the part of the defendant which caused the minor to occupy a bed with Joe Franks, nor does it specify who Joe Franks may be. These matters, however, appear to us to be evidentiary in their nature, and would not have any more fully advised the appellant of the specific act induced by her to be performed by the minor, tending to cause the minor to lead an idle, dissolute and immoral life. However, if any error was com-

mitted by the trial court in overruling the defendant's demurrer, it is rendered harmless by reason of section 4½ of article VI of the Constitution, wherein it specifies that no error of the court in ruling as to any matter of pleading should be ground for reversal unless the error complained of has resulted in a miscarriage of justice. That there was no miscarriage of justice in this case appears in the record before us, from which we hereinafter set forth a portion of the testimony.

The testimony in support of the indictment is well summarized by the prosecution and is borne out by an examination of the transcript. This summary shows the following: Marianna Fields, at the time involved in this action, was a minor of the age of sixteen years; came to Sacramento September 11, 1933, from her home at Fair Oaks, to go to work at the home of Mr. and Mrs. MacLachlan, and attend school at junior college; she left the MacLachlan home and went to live with Betty Lynch on 12th and G Streets; found work as a taxi-dancer at St. Nicholas dance-hall; there she met the appellant, who was also employed as a taxi-dancer. On October 19, 1933, the minor had a conversation at the dance-hall with the appellant, at which time a man by the name of George Leal was present. In this conversation the appellant told the minor that she could introduce her to a man down at the dance-hall who could help her quite a bit; who would buy her clothes and "wise her up" to a few things so that she could make better money than she had been making. The following night about 1 o'clock the minor had another conversation with the appellant, at which the appellant told her that by "going on the line", she could make more money, and that such work would be more entertaining than working in a dance-hall, and that she, the appellant, would introduce her to a man that evening, stating that this man would buy the minor clothes and "wise her up" so that she could "go on the line". After this conversation the appellant took the minor over to a man named Joe Franks and introduced her. The minor then had a glass of beer with Joe Franks, and went on dancing; about five minutes later the appellant returned and advised the minor to go with Joe Franks and to listen to what he had to say to her, and to do what he told her to do. After the dance closed the appellant took the minor out to the front of the dance-

hall, where Joe Franks was waiting for her. The minor had made an engagement with George Leal to have him take her home, but when the appellant advised her to go with Joe Franks, she acted upon this advice and went with the latter. The appellant, the minor and Joe Franks left the dance-hall and went to a restaurant on K Street between 4th and 5th, where they had something to drink; a glass of beer was first drunk, and then some whisky, the whisky being produced by Joe Franks; the bartender, "Pinkie" Logan, joined the party, and also had a drink with them; the appellant was then escorted to a taxi, and the minor and Joe Franks started across the street; at that time the minor states that she felt dazed, and from that time remembered nothing that happened; when she awoke the next morning she was in a bed with Joe Franks in a room at the Coloma hotel; they went out for breakfast in the morning, after which they went to where the minor had lived with Betty Lynch; here, she got her clothes; Franks and the minor returned to the Coloma hotel, where Franks took the clothes up to his room; following this they went over to the appellant's place, where Franks bought two dresses from the appellant for the minor; the three then went shopping, on which tour many items of personal effects were purchased for the prosecutrix by Joe Franks; the appellant selected the articles; underclothes, stockings and cosmetics were purchased; after the purchases Franks took the articles to the Coloma hotel. In the face of this testimony we think the jury was well warranted in finding the defendant guilty.

The appellant contends that the court erred in failing to give the following instruction, to wit: "I instruct you that the presumption of innocence with which the defendant is surrounded by law is sufficient to overcome all partial evidence which you may believe to have been introduced by the prosecution, and it is the duty of the prosecution to connect the defendant with every act and circumstance necessary to prove the crime." A reading of this requested instruction demonstrates that its effect would only be to mislead rather than to instruct the jury as to its proper course of action. Instead of giving such an instruction the court did advise the jury that before the defendant could be found guilty of the charge set

forth in the indictment, that the jury must find, beyond a reasonable doubt, not only that all the material allegations of the charge are true, but that said Marianna Fields (*alias* Jean Larson) is leading, or in danger of leading, an idle, dissolute or immoral life by reason of the alleged acts as set forth in the indictment; otherwise, it would be the duty of the jury to render a verdict of not guilty. A consideration of all the instructions set out in the transcript leads to the conclusion that the jury was properly instructed, and no cause of complaint lies in reference thereto.

■ It is further contended that the deputy district attorney was guilty of misconduct in his argument to the jury. In this particular we may state that the court specifically instructed the jury that they could only consider in their deliberations the testimony which had been introduced; that the case was to be tried only upon the evidence, etc. One portion of the alleged objection to the argument of the district attorney is as follows: "Probably it was a scheme of Franks at that time to give her some intoxicating liquor and take her over there and break her in right and get her ready for the 'line'." The testimony which we have heretofore set out very properly called for such remarks, if not for an argument slightly more pungent. We have in this case a schoolgirl unacquainted with the ways of the world, by some means coming in contact with the taxi-dancer, initiated into that "border-line" method of earning a living, introduced by one, as the record shows, familiar with "border-line" living, to a man of the same grade of society, told how she could earn more money, secure better clothing, and other inducements held out, as the record shows, well calculated to influence the thoughts and conduct of an unsophisticated schoolgirl from a life of rectitude to a life of easy virtue. Under such circumstances the language of the district attorney would have to go beyond anything shown in the record before us in order to justify an appellate court, in the face of the testimony set forth herein, to hold that there had been a miscarriage of justice.

The order and judgment are affirmed.

Thompson, J., and Pullen, P. J., concurred.